**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

BURT ANTHONY BURTON,

        Plaintiff,

    v.

SHALENA COOK JONES, in her individual
and official capacities,

        Defendant.

CIVIL ACTION NO.: 4:23-cv-111

## O R D E R

     Plaintiff Burt Anthony Burton sued Defendant Shalena Cook Jones, in her individual and official capacities, for violation of the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4 (Count I); for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II); for retaliation under Title VII (Count III); for First Amendment retaliation, through 42 U.S.C. § 1983 ("Section 1983") (Count IV); for violation of the Equal Protection Clause of the Fourteenth Amendment, through Section 1983 (Count V); and for punitive damages, under Section 1983 (Count VI). (Doc. 1-1, pp. 29–39.) Presently before the Court is Defendant's Motion for Summary Judgment as to all of Plaintiff's claims. (Doc. 31.) Plaintiff filed a Response, (doc. 39), and Defendant filed a Reply, (doc. 42). For the reasons below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion. (Doc. 31.)

# BACKGROUND

## I.    Factual Background[1]

Plaintiff Burt Anthony Burton worked for the District Attorney's Office ("D.A.'s Office") in Chatham County from 2015 until March 2022. (Doc. 39-1, pp. 1, 6.) Plaintiff is openly gay and served as the "trial partner" of Skye Musson, another "A.D.A." in the D.A.'s Office, from January 2021 until April 2021. (Id. at pp. 1–2; doc. 39-2, p. 1; doc. 34, pp. 116.) Defendant Shalena Cook Jones took office as District Attorney of Chatham County in January 2021 and was still serving as D.A. at the end of Plaintiff's tenure at the D.A.'s Office. (Doc. 39-1, pp. 1, 6.)

Plaintiff claims that, in 2021, Musson complained to Defendant that the D.A.'s office maintained a "bro culture," in which heterosexual men who conformed to gender stereotypes often received more favorable treatment than women or non-gender-conforming men. (Doc. 39-2, p. 2; see also doc. 39-4.) Musson, according to Plaintiff, complained that this form of sex discrimination was the reason she was passed over for a promotion in January 2021. (Doc. 39-2, p. 2; see also doc. 39-4.) Musson's employment with the D.A.'s Office ended in April 2021. (Doc. 39-2, p. 2; doc. 34, p. 116; see also doc. 39-4.)

After Musson's employment ended, she filed a Charge of Discrimination against the D.A.'s Office with the Equal Employment Opportunity Commission (the "EEOC") on June 23, 2021.

---

[1] Defendant attached a Statement of Undisputed Material Facts to her Motion for Summary Judgment. (Doc. 31-2.) With his Response in Opposition to Defendant's Motion, (doc. 39), Plaintiff attached a Response and Objections to Defendant's Statement of Undisputed Material Facts, (doc. 39-1). Also attached to Plaintiff's Response in Opposition was Plaintiff's own Statement of Additional Material Facts Raising Triable Issues. (Doc. 39-2.) Although Defendant subsequently filed a Reply in Support of her Motion for Summary Judgment, (doc. 42), she did not directly respond to Plaintiff's Statement of Additional Material Facts, (doc. 39-2). Plaintiff's allegations in his Statement of Additional Material Facts are well-supported throughout by citations to the record. (Id.) For purposes of this Factual Background, the Court will accordingly cite to both Plaintiff's Response and Objections to Defendant's Undisputed Material Facts, (doc. 39-1), and, as necessary, Plaintiff's unanswered Statement of Additional Material Facts, (doc. 39-2), with accompanying citation to the record material supporting those facts.

(Doc. 39-2, p. 2; see also doc. 39-4.)  Plaintiff claims that, when he learned Musson intended to file a Charge of Discrimination with the EEOC, he offered to be a witness on behalf of Musson and authorized her to identify him in her Charge of Discrimination.  (Doc. 39-2, p. 2; doc. 39-7, pp. 2–3.)  Musson's EEOC charge states

> I expressed that I believed that [Defendant] was perpetuating a "bro culture," meaning that men obtained preferential treatment in training and upward opportunities at the office.  My trial partner, a gay male, and I did not benefit from this culture because we did not conform to the preferred gender and gender stereotypes of the office.

(Doc. 39-4, p. 2; doc. 39-2, p. 2.)  Defendant was aware that Plaintiff was the "trial partner" referenced in Musson's EEOC charge.  (Doc. 39-2, p. 2; doc. 34, p. 225.)  Defendant eventually responded to Musson's EEOC charge with a January 14, 2022, letter, signed by Defendant.  (Doc. 39-5, p. 2.)  Plaintiff claims that Defendant denigrated Musson to employees in the D.A.'s Office.  (Doc. 39-2, p. 3; doc. 33, pp. 81–82.)

During Plaintiff's employment with the D.A.'s Office, he was a member of a group text message exchange among current and former employees of the D.A.'s office.  (39-2, p. 3; doc. 33, p. 108; doc. 39-6, pp. 2–3.)  This text message exchange included, among others, Musson and Marie DeFusco.  (39-2, p. 3; doc. 33, p. 108; doc. 39-6, pp. 2–3.)  On March 21, or 22, 2022, Plaintiff sent a text message to this group text stating: "So Tim and Rene[e] are going to Cobb county."  (Doc. 39-2, pp. 3–4; doc. 33, p. 108; doc. 39-6, p. 3.)  On March 22, 2022, during a meeting that included DeFusco, Defendant asked members of the D.A.'s Office whether anyone had shared information about Renee Roberts's forthcoming departure from the Office.  (Doc. 39-2, p. 4; doc. 34, pp. 103–04; doc. 39-6, p. 3.)  DeFusco told Defendant that members of the group text message had exchanged information about Renee Roberts's departure.  (Doc. 39-2, p. 4; doc. 34, pp. 103–04; doc. 39-6, p. 3.)  Defendant then observed the group text message, and Plaintiff's

text stating: "So Tim and Rene[e] are going to Cobb county." (Doc. 39-2, p. 4; doc. 34, pp. 103–04; doc. 39-6, p. 3.) Defendant then terminated both DeFusco and Plaintiff on that same day. (Doc. 39-1, p. 6.) Defendant stated that the reason for the terminations was that the text message group amounted to improper sharing of confidential information about employees at the D.A.'s Office without authorization. (Id.) On March 30, 2022, Plaintiff received a letter from Defendant titled "Termination of Employment." (Doc. 39–2, p. 4; doc. 39-3.) The letter stated Plaintiff was terminated, effective March 22, 2022, "for sharing confidential personnel information of DAO employees with members of the public, former employees, a county attorney and others without having express authorization to do so." (Doc. 39-2, p. 4; doc. 39-3, p. 2.)

The D.A.'s Office has a written confidentiality policy stating,

> Our constituents and the legal community entrust us with important information relating to the prosecution of cases. Any information considered confidential cannot be disclosed to external parties or to employees without a 'need to know.' If an employee questions whether information is considered confidential, the employee should first check with his or her immediate supervisor. This policy is intended to alert employees to the need for discretion and professionalism at all times and is not intended to inhibit normal business communications. All inquiries from the media must be referred to the District Attorney or the Chief Assistant District Attorney.

(Doc. 39-8, p. 8.)

## II.    Procedural History

On March 21, 2023, Plaintiff filed suit in the Superior Court of Chatham County against Defendant, in her individual and official capacities; Michael L. Edwards of the D.A.'s Office, in his individual capacity; and against Chatham County, Georgia. (Doc. 1-1.) Plaintiff's action brought claims for violation of the GWA against Defendant in her official capacity and against Chatham County (Count I); sex discrimination under Title VII against Defendant in in her official capacity and against Chatham County (Count II); Title VII retaliation against Defendant in her official capacity and against Chatham County (Count III); First Amendment retaliation, through

Section 1983, against all defendants (Count IV); violation of the Equal Protection Clause of the Fourteenth Amendment, through Section 1983, against Defendant in her individual and official capacities and against Chatham County (Count V); and punitive damages, through Section, against Defendant and Edwards in their individual capacities (Count VI). (Doc. 1-1, pp. 29–39.) Chatham County thereafter removed the action to this Court with the consent of Edwards and Defendant. (Doc. 1.) Since the removal, Edwards and Chatham County have both been dismissed from the case. (Doc. 20; doc. 43.)

Defendant filed the at-issue Motion for Summary Judgment arguing that the Court should grant judgment in her favor as to all of Plaintiff's counts against her. (Docs. 31, 31-1.) Plaintiff filed a Response, arguing only that his Title VII retaliation claim (Count III) should survive summary judgment. (Doc. 39.) Defendant filed a Reply. (Doc. 42.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). The moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341

(11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove its case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

**DISCUSSION**

As an initial matter, Plaintiff did not respond to any of Defendant's arguments for summary judgment against Counts I, II, IV, V, or VI. (See doc. 39.) Plaintiff has therefore abandoned those claims. See McIntyre v. Eckerd Corp., 251 F. App'x 621, 626 (11th Cir. 2007) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (quoting Resolution Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995))). The Court accordingly **GRANTS** Defendant's Motion for Summary Judgment as to Counts I, II, IV, V, and VI. (Doc. 31.) This leaves only Plaintiff's Title VII retaliation claim (Count III). (Doc. 1-1, pp. 32–34.)

Title VII prohibits employers from discriminating against an employee because he "opposed . . . an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). For an employee's Title VII retaliation claim to survive summary judgment, the employee must show—through either "direct or circumstantial evidence"—that a reasonable jury could find the employer's conduct violated the anti-retaliation provision. Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1310 (11th Cir. 2016). When an employee offers purely circumstantial evidence to support his retaliation claim, as Plaintiff does here, the employee can defeat summary judgment by satisfying the three-step McDonnell Douglas burden shifting framework.[2] Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1289 (11th Cir. 2021) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 792 (1973)).

At the first step of McDonnell Douglas, the employee "must establish a prima facie case of retaliation." Id. (citing Johnson v. Miami-Dade Cnty., 948 F.3d 1318, 1325 (11th Cir. 2020)). Second, if the employee successfully makes a prima facie case, "[t]he burden then shifts to the

---

[2] Because the Title VII retaliation claim survives summary judgment under McDonnell Douglas, the Court need not address Plaintiff's "convincing mosaic" argument. (See doc. 39, pp. 11–12.)

employer to articulate a legitimate, nonretaliatory reason for [its] adverse action." Id. (citing Johnson, 948 F.3d at 1325). Third, if the employer articulates a legitimate reason, "'the burden shifts back to the plaintiff to establish that the reason offered by the employer was not the real basis for the decision, but a pretext' for retaliation." Id. (quoting Johnson, 948 F.3d at 1325). The Court, for the reasons below, finds that Plaintiff has satisfied this framework and that his Title VII retaliation claim therefore survives summary judgment.

## I.    Plaintiff's Prima Facie Retaliation Case

To establish a prima facie case of Title VII retaliation and satisfy the first step of McDonnell Douglas, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is some causal relationship between the events. Id. (citing Johnson, 948 F.3d at 1325); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). It is seemingly undisputed that Plaintiff's termination constitutes an adverse employment action. (See generally doc. 42; see also Griffith v. Nicholas Fin., Inc., 214 F. Supp. 3d 1215, 1225 (N.D. Ala. 2016) ("The termination of a person's employment is the classic and ultimate tangible employment action.") (quotations omitted).) Indeed, Defendant's argument only addresses the first and third steps of Plaintiff's prima facie case—asserting that Plaintiff did not engage in protected activity and that, even if he did, there is no causal relationship between that activity and his termination. (Doc. 42, pp. 2–7.) As set out below, the Court rejects Defendant's argument and finds Plaintiff has met his initial burden of showing a prima facie case. Plaintiff engaged in protected conduct when he volunteered to be a witness in Musson's EEOC charge; and he has demonstrated a sufficient "causal relationship" between this act and his termination.

### A.    Whether Plaintiff Engaged in Protected Activity Under Title VII

The text of Title VII's anti-retaliation provision protects two general types of employee activity.  See Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (citing 42 U.S.C. § 2000e-3(a)).  First, the "opposition clause" protects employee conduct that "oppose[s] any practice made an unlawful employment practice by this subchapter."  Id. (citing 42 U.S.C. § 2000e-3(a)).  Second, the "participation clause" protects employees from retaliation for having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  Id. (citing 42 U.S.C. § 2000e-3(a)).

Plaintiff proceeds under the participation clause and argues he engaged in protected conduct by "providing support" and "volunteering to serve as a witness in Skye Musson's EEOC charge against Defendant."  (Doc. 39, pp. 5, 3.)  In particular, Plaintiff alleges in his sworn declaration attached to his Response that when he learned Musson intended to file an EEOC charge against the D.A.'s Office, he "offered to be a witness on behalf of Ms. Musson and authorized her to identify [him] in her Charge of Discrimination."  Doc. 39-7, pp. 2–3; see also doc. 39-2, p. 2; doc. 39, pp. 3–6.)  While Musson's subsequent EEOC charge did not specifically identify Plaintiff by name, (see doc. 39-4), Plaintiff asserts that it nevertheless made him "easily-identifiable" as a supporter and witness by its statement: "My trial partner, a gay male, and I did not benefit from th[e D.A.'s Office's] 'bro culture' because we did not conform to the preferred gender and gender stereotypes of the office."  (Doc. 39, p. 5; doc. 1-1, p. 20; see also doc. 39-2, p. 3; doc. 39-4, p. 2.)  Plaintiff accordingly argues that his assistance and offer to be a witness in Musson's EEOC charge amounted to "assist[ing], or participat[ing] in any manner" in a Title VII proceeding and is therefore a protected act under the "exceptionally broad" participation clause.  (Doc. 39, pp. 3–4 (citing Clover, 176 F.3d at 1353).)  In making this argument, Plaintiff cites a case from the Second

Circuit Court of Appeals, <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 166 (2d Cir. 2005), to contend that "the antiretaliation clause [] protect[s] a volunteer witness poised to testify in support of a coworker's discrimination claims."  (Doc. 39, p. 4 (quoting <u>Jute</u>, 420 F.3d at 175).)

Defendant responds by emphasizing that Plaintiff "never testified as a witness in the Musson case" and asserting that "[t]he only activity relied upon by Plaintiff" to show that he engaged in protected conduct "is his association with Skye Musson."  (Doc. 42, pp. 4, 3.) According to Defendant, this does not constitute protected participation-clause activity.  (<u>Id.</u> at pp. 2–5.)  Defendant seemingly suggests that—even if Plaintiff's relationship with Musson made Defendant "*believe[] he would*" support Musson's claims—that mere relationship, without more, is not a tangible act of the type protected under the participation clause.  (<u>See id.</u> at p. 3.)  Defendant also rebuffs Plaintiff's reliance on <u>Jute</u>, arguing that <u>Jute</u>'s protected-conduct holding is inapplicable here because, unlike in that case, "Musson's EEOC charge . . . did not identify Plaintiff by name."[3]  (<u>Id.</u> at p. 4.)

The Court finds that, in alleging he "provid[ed] support" and "volunteer[ed] to serve as a witness in Skye Musson's EEOC charge," Plaintiff has produced sufficient evidence that he engaged in statutorily protected conduct under the participation clause.  (<u>See</u> doc. 39, pp. 5, 3.)

---

[3] Defendant also argues the Court should grant her Motion because Plaintiff supposedly has not shown that he undertook his alleged protected conduct pursuant to an "objectively reasonable" belief that Defendant "engaged in unlawful employment practices.'"  (Doc. 42, pp. 4–5.)  This is not a strong argument.  While Title VII plaintiffs must show they acted pursuant to an objectively reasonable belief that their employer was engaged in unlawful employment practices when proceeding under the opposition clause, there is no such requirement when proceeding under the participation clause.  <u>See</u> <u>Clover</u>, 176 F.3d at 1350–54 (conduct protected under participation clause even though it was not taken pursuant to objectively reasonable belief in employer unlawfulness); <u>see also</u> <u>Wesolowski v. Napolitano</u>, No. CV 211–163, 2013 WL 1286207, at *6 (S.D. Ga. Mar. 25, 2013) ("While a plaintiff must demonstrate that he had a reasonable good faith belief for opposition clause activity, there is no such requirement for participation clause activity.").  Here, Plaintiff is accordingly not obligated to show he held an objectively reasonable belief that Defendant engaged in unlawful employment practices to establish protected conduct under the participation clause.

The Eleventh Circuit Court of Appeals has established that, by shielding employees when they assist or participate in Title VII proceedings "in any manner," the text of the participation clause provides "exceptionally broad protection." Clover, 176 F.3d at 1353. Indeed, "the adjective 'any' is not ambiguous" and because "'Congress did not add any language limiting the breadth of that word,' [the word] 'any' [in the participation clause] means all." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997) (quoting United States v. Gonzales, 520 U.S. 1, 5 (1997)). This protection for "all" forms of assistance or participation extends to all conduct that an employee undertakes "in conjunction with or after the filing of a formal charge with the EEOC." E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (citing Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978)); see also Clover, 176 F.3d at 1352–53 (employee's statement to employers conducting investigation in response to coworker's EEOC charge protected under participation clause); Anderson v. Emory Healthcare, Inc., No. 1:19-cv-04891, 2021 WL 4533270, at *10–11 (N.D. Ga. July 27, 2021) (even though plaintiff never testified in coworker's EEOC proceeding, her provision of information that aided investigation was participation-clause conduct under the "relatively light standard").

To be sure, the Eleventh Circuit has never specifically addressed whether the participation clause protects employees from retaliation when they volunteer to be a witness in a coworker's EEOC charge but never give live testimony. See, e.g., Thampi v. Manatee Cnty. Bd. of Com'rs, 384 F. App'x 983, 988 (11th Cir. 2010) (not addressing whether employee's being listed as witness in coworker's internal complaint was participation-clause activity). But, to that end, the Circuit Court has never indicated that such conduct is insufficient, or that conduct beyond what Plaintiff alleged is required. To read in such a limitation here, without clear authority, would be to

improperly "add to the terms of Title VII's anti-retaliation provision what Congress left out." Merritt, 120 F.3d at 1187.

The Eleventh Circuit, indeed, has only addressed the scenario at issue here in the context of the opposition clause—not the participation clause. In Thampi v. Manatee County Board of Commissioners, for instance, an engineer's coworker filed an "internal discrimination complaint" against their joint supervisor and listed the engineer as a witness. 384 F. App'x at 985–86. Before the engineer gave any testimony, the supervisor terminated him. Id. at 985–87. The Eleventh Circuit affirmed summary judgment against the engineer in his ensuing Title VII retaliation action. Id. at 991. The court, however, only assessed the engineer's conduct under the "opposition clause" because it found he had "abandoned any claim that his being listed as a witness in [the coworker's] internal complaint constitutes protected activity under Title VII's participation clause." Id. at 988. This is not a trivial distinction: The Eleventh Circuit has confirmed that "the participation clause provides wider and stronger protection than the opposition clause." Merritt, 120 F.3d at 1187 (citing Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989)).

Eleventh Circuit cases that do apply the participation clause usually only find that conduct is unprotected where the employee's supporting evidence is far less convincing than what Plaintiff provided here. In E.E.O.C. v. Total System Services, Inc., for example, the court held that an employee's testimony in her employer's internal sexual-harassment investigation was not protected because "no EEOC complaint had been filed" and the participation clause does not extend to "participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." 221 F.3d at 1173–74; see also Cheatham v. DeKalb Cnty., 682 F. App'x 881, 886 (11th Cir. 2017) (participating in internal investigation that was not initiated in response to EEOC charge was not participation-clause conduct). This rule operates to exclude

from participation-clause protection employees who merely encourage others to pursue EEOC charges in the future.  Indeed, in Miles v. City of Birmingham, an employee who only "advised" a coworker to "take her complaint to . . . the EEOC" was not protected because there was "no evidence . . . that [the employee] either helped [the coworker] file an EEOC charge or further assisted in any resulting EEOC investigation."  398 F. Supp. 3d 1163, 1173, 1185–86 (N.D. Ala. 2019).

Moreover, in cases like Anderson v. Emory Healthcare, Inc., courts find that the employee has failed to show protected activity only because there is insufficient evidence that their alleged participation-clause conduct occurred at all.  2021 WL 4533270, at *10.  In that case a nurse, who was not listed as a potential witness, supported her protected-activity argument merely by pointing to a third party's statement that the nurse "may have" been asked to provide information related to a coworker's EEOC charge against the hospital.  Id.  The court, agreeing with an argument by the defendant hospital, found this evidence was "impermissibly speculative to create a genuine issue of material fact" on whether the alleged conduct had indeed occurred.  Id.

These cases suggest that Eleventh Circuit courts typically only find conduct unprotected by the participation clause where, unlike here, there is insufficient evidence that the employee's actions were "in conjunction with or after" a formal EEOC charge or that the alleged conduct ever occurred in the first place.  In light of this authority, Plaintiff has successfully established, for purposes of summary judgment, that he engaged in protected activity under the Eleventh Circuit's interpretation of the participation clause.

Authority from other circuits—that have more directly addressed whether being listed as a witness in a coworker's EEOC charge is protected under the participation clause—confirms this holding.  In Jute, a technician "agreed to testify on [her coworker's] behalf" in the coworker's Title

VII lawsuit against their joint employer.  420 F.3d at 169.  The technician's supervisor demoted her the day after learning she was set to appear as a coworker-friendly witness.  Id. at 170.  Even though the coworker's lawsuit ultimately settled before the technician could give her testimony, the Second Circuit Court of Appeals found her conduct was protected under the participation clause.  Id. at 175.  In reaching its holding, the court noted—just as the Eleventh Circuit did in Clover—that the participation clause confers "exceptionally broad protection" by its reference, without "limiting" language, to employees who "participate[] in any manner" in Title VII proceedings.  Id. at 174.  The court found, in light of this broad protection, that the participation clause "extends to an employee who is named as a voluntary witness in a Title VII suit, but who is never called on to testify."  Id. at 168.  The technician's act of "collaborat[ing] with [the coworker], such that [the coworker] candidly named [the technician] as a voluntary and favorable witness," was therefore protected activity.  Id. at 175.

District courts have applied Jute's holding to find that employee conduct nearly identical to Plaintiff's here was protected under the participation clause.  Notably, in Crevier–Gerukos v. Eisai, Inc., a salesperson's colleague filed an EEOC charge against their employer that included an allegation the employer had mistreated an "unnamed coworker."  No. H-11-0434, 2013 WL 12137089, at *1–2 (S.D. Tex. June 24, 2013).  Even though the charge only identified her "by description," "[t]he unnamed coworker appear[ed] from context to be [the salesperson]."  Id. at *2.  Beyond the charge's description, the salesperson never testified in the ensuing EEOC proceeding.  Id. at *3.  The employer subsequently terminated the salesperson and, when the salesperson brought a Title VII retaliation action, the district court denied the employer's motion for summary judgment.  Id. at *3, *10.  Citing Jute, the court found the salesperson's conduct qualified for the participation clause's broad protection because "providing testimony or answering

questions in an interview are not the only activities protected under the participation clause." Id. at *6–7.  The record supported an inference that the salesperson "took affirmative steps to assist [her colleague] in her EEOC . . . complaint[]" by providing information that the colleague then used in filing her charge.  Id. at *6.  Furthermore, in reaching its holding, the court rejected the employer's argument that the salesperson "did not engage in protected activity because she was not mentioned by name in [her colleague's] EEOC complaint[]."  Id. at *7.  The court found that the charge's failure to list the salesperson's exact name was irrelevant given that, "[b]ased on the description in the EEOC charge, the coworker who provided assistance was readily recognizable as [the salesperson]."  Id.; see also E.E.O.C. v. Creative Networks, LLC, No. CV 05-3032-PHX-SMM, 2010 WL 276742, at *7 (D. Ariz. Jan. 15, 2010) ("Allen engaged in protected activity when she was named as a witness in Encinas-Castro's charge of discrimination."); EEOC v. Cal. Psych. Transitions, Inc., 725 F. Supp. 2d 1100, 1108 (E.D. Cal. 2010) ("The participation clause includes those whom the employer has reason to believe is assisting the employee in protected activity.").

These cases, though not binding authority for this Court, verify the soundness of its ruling. Both the Second Circuit and the Eleventh Circuit recognize that the participation clause's unconditional language confers "exceptionally broad" protection for employee conduct.  Compare Clover, 176 F.3d at 1353, with Jute, 420 F.3d at 174.  Jute's ruling that the clause's broad text protects employees when they are "named as a voluntary witness in a Title VII suit, but [are] . . . never called on to testify," is therefore instructional.  Jute, 420 F.3d at 168.  To the extent Defendants distinguish the facts of Jute from the facts of this case, opinions like Crevier–Gerukos demonstrate that those differences are not meaningful.  Like the salesperson in Crevier–Gerukos, the record suggests Plaintiff took "affirmative steps to assist" Musson in her EEOC charge by providing her with information that Musson used in filing the charge—namely, that he had

witnessed sexually discriminatory conduct in the D.A.'s office. <u>Crevier–Gerukos</u>, 2013 WL 12137089, at *6. With this, the fact that Plaintiff's actual name is missing from the charge is of no substance. As in <u>Crevier–Gerukos</u>, the Musson EEOC charge's contextualized description made it clear that Plaintiff was Musson's unnamed witness: Plaintiff was Musson's only trial partner and a gay man, and the charge described the witness as "[m]y trial partner, a gay male." (Doc. 39-4, p. 2; <u>see also</u> doc. 39, p. 5.)

Plaintiff has therefore established that, under applicable law, he engaged in protected participation-clause activity by volunteering to serve as a witness in Musson's EEOC charge. Having made this finding, the Court moves to the next step of Plaintiff's prima facie case.

> **B.    Whether Plaintiff has Demonstrated a Causal Relationship between his Protected Conduct and his Termination**

As to the final element of his prima facie case—causation—Plaintiff has shown that there is "some causal relationship" between his termination on the one hand and his participation in Musson's EEOC charge on the other. <u>See</u> <u>Tolar</u>, 997 F.3d at 1289. The causal showing a plaintiff must make for a prima facie case is less demanding than the separate "but for" standard that will apply at the "pretext" step. <u>Id.</u> at 1294; <u>see also</u> <u>Criag v. City of Mobile</u>, No. 1:23-cv-00269-KD-M, 2024 WL 4905630, *20 (S.D. Ala. Nov. 27, 2024). At this stage, Plaintiff need only show that: "(1) the decisionmakers knew of his protected activity; and (2) the protected activity and adverse action were not wholly unrelated." <u>Harris v. Fla. Agency for Health Care Admin.</u>, 611 F. App'x 949, 951 (11th Cir. 2015) (citing <u>Shannon v. Bellsouth Telecomms., Inc.</u>, 292 F.3d 712, 716 (11th Cir. 2002)).

Plaintiff argues he has satisfied the causation requirement of his prima facie case because he has shown that Defendant was aware of his protected conduct at the time she terminated him. (Doc. 39, pp. 6–8.) Indeed, as Plaintiff points out, Defendant herself admitted during deposition

that she knew Plaintiff was the one referenced in Musson's EEOC charge.  (Id. at p. 7 (citing doc. 34, p. 225).)  Defendant argues in reply that Plaintiff has failed to show causation because of the nine months that passed between Plaintiff's protected conduct (the June 23, 2021, filing of Musson's EEOC charge), and the adverse employment action (the March 22, 2022, termination). (Doc. 42, pp. 5–6.)  According to Defendant, this "substantial delay between [the] allegedly protected expression and the adverse action" means "Plaintiff cannot rely upon temporal proximity to establish causation."  (Id. at p. 6.)  Defendant thereby avers that "in the absence of other evidence tending to show causation, the complaint of retaliation fails."  (Id.)

An employee satisfies the first prong of his "causal link" requirement by showing that a decisionmaker was aware of the employee's protected activity upon implementing an adverse action.  Singleton v. Pub. Health Tr., 725 F. App'x 736, 738 (11th Cir. 2018).  Once the employee makes this showing, there are two general ways the employee can establish the activity and action were "not wholly unrelated" to satisfy the second prong.  Id.; Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363–64 (11th Cir. 2007); Jones v. Suburban Propane, Inc., 577 F. App'x 951, 954–55 (11th Cir. 2014).  One way is for the employee to demonstrate "a close temporal proximity between the decision-maker's acquisition of th[e] knowledge [of the employee's protected act] and an adverse employment action."  Singleton, 725 F. App'x. at 738.  If the employee's only causation evidence is the decisionmaker's knowledge and temporal proximity, then the "proximity must be 'very close.'"  Id. (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).  However, even if there is a longer temporal gap between the decisionmaker acquiring knowledge of the protected act and the adverse action, the employee may still establish a causal link by presenting "additional evidence to demonstrate a causal connection."  Jones, 577 F. App'x at 955; see also

Thomas, 506 F.3d at 1364; Matthews v. City of Mobile, 702 F. App'x 960, 967–68 (11th Cir. 2017).

Here, Defendant admitted during her deposition that, at some unspecified point, she became "aware that [Plaintiff] was referenced in [Musson's] EEOC charge." (Doc. 34, p. 225.) Viewing this in the light most favorable to Plaintiff, the Court finds he has submitted evidence to support a determination that Defendant was aware of his protected conduct at the time of the termination. With the first prong of his causal link established, Plaintiff can show the protected conduct and adverse action are "not wholly unrelated" either by demonstrating close temporal proximity or by presenting additional evidence of causal connection.

Plaintiff has failed to establish a sufficiently close temporal proximity for causation. Given the EEOC's statutory obligation to serve notice of any EEOC charge on respondent employers within ten days of the filing date,[4] Defendant almost certainly became aware of Musson's EEOC charge—and its reference to Plaintiff—within ten days of the June 23, 2021, filing. (See doc. 39-2, p. 2 (citing doc. 39-4.) That leaves nearly nine months between when Defendant became aware of Plaintiff's protected conduct and when she terminated him on March 22, 2022. (See doc. 39-2, p. 4.) This gap plainly exceeds the Eleventh Circuit's "very close" temporal proximity requirement for showing causation in the absence of additional evidence. See Thomas, 506 F.3d at 1364 (concluding a gap of three to four months is not close enough).

Nevertheless, the Court finds Plaintiff has shown a sufficient causal link for a prima facie case based on "additional evidence" in the record suggesting a causal relationship between his

---

[4] See 42 USCS § 2000e-5, Part 1 of 6 ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee . . . within ten days . . . . ").

EEOC participation and his termination.  <u>See</u> <u>Jones</u>, 577 F. App'x at 955.  Indeed, while nine months may have elapsed between Musson's EEOC filing and Plaintiff's termination, there is considerable evidence "from which a reasonable jury could find [a] causal connection between" Plaintiff's participation and his firing.  <u>See</u> <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting <u>Wascura v. City of S. Miami</u>, 257 F.3d 1238, 1248 (11th Cir. 2001)).  Such evidence includes that Defendant "expressed contempt for Ms. Musson and denigrated her to employees of the D.A.'s Office," (doc. 39, p. 7; doc. 39-2, p. 3; doc. 33, pp. 81–82).  However, the most significant piece of additional evidence is the events surrounding Plaintiff's March 22, 2022, termination.  Plaintiff argues that, despite Defendant's claims, his text message that "Tim and Rene[e] are going to Cobb county" was "innocuous," (doc. 39, pp. 7–8), but that "[u]pon seeing the message . . . [Defendant] immediately became irate that [Plaintiff] shared that information with Ms. Musson" (doc. 39-2, p. 4).  This could support an inference that Defendant's knowledge that Plaintiff was assisting Musson in her EEOC charge caused her to have a particularly strong reaction to the text given that Plaintiff sent it, in particular, to Musson.  Though not conclusive evidence that Defendant terminated Plaintiff because of his participation in the charge, viewed in the light most favorable to Plaintiff alongside his showing that Defendant was aware of his protected conduct, it is enough additional evidence to create a dispute as to whether those events were "not wholly unrelated."  <u>See</u> <u>Matthews</u>, 702 F. App'x at 968 ("Even if  the temporal proximity of these events and Matthews's termination is not enough to automatically establish a causal link, however, Matthews satisfied her burden by coming forward with other evidence of a causal link.  Before she was terminated, Williams told her that he was 'sick and tired' of her EEOC complaints.  This statement is sufficient to establish a causal link for a prima face

case of retaliation."). Having satisfied this final step, Plaintiff has established a prima facie case of Title VII retaliation.

## II.    Defendant's Legitimate, Non-retaliatory Reason for Terminating Plaintiff and Pretext

Because Plaintiff has established a prima facie case of Title VII retaliation, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for terminating Plaintiff. McAlpin v. Sneads, 61 F.4th 916, 932 (11th Cir. 2023)). Defendant's burden at this stage is "exceedingly light." Furcron, 843 F.3d at 1312. The Court need not be persuaded that the defendant was "actually motivated by the reasons offered." Id. (citing Tex. Dep't. Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981)). Defendant need only offer admissible evidence that raises a genuine issue of fact as to whether she terminated Plaintiff for retaliatory reasons. Id. at 1312–13 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). The Court finds Defendant has carried this light burden by alleging she terminated Plaintiff "for sharing confidential information of an employee of the District Attorney's office without authorization." (Doc. 42, p. 6; doc. 39-1, p. 6.) The burden accordingly shifts back to Plaintiff to establish that this reason is pretext for retaliation. Furcron, 843 F.3d at 1310–11.

To establish at summary judgment that an employer's proffered reason is pretext for illegal retaliation, a plaintiff must show "both that the reason was false, and that [retaliation] was the real reason." Gogel, 967 F.3d at 1136 (quoting Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007)). The Eleventh Circuit has established that this ultimately requires the plaintiff to demonstrate that, despite his employer's proffered reason, "one could reasonably infer that but for [his] protected conduct the employer would not have taken the alleged adverse action." Tolar, 997 F.3d at 1294.

20

Plaintiff argues that Defendant's explanation is pretextual because the D.A.'s Office confidentiality policy did not prohibit sharing the type of personnel information implicated by his group text—that "Tim and Rene[e] are going to Cobb county." (Doc. 39, pp. 7–11.) Rather, according to Plaintiff, the policy only prohibited unauthorized sharing of "information concerning investigations and prosecutions." (Id. at p. 9.) To support his argument, Plaintiff excerpts the supposedly relevant portion of the confidentiality policy, which states, "[a]ny information considered confidential cannot be disclosed to external parties or to employees without a 'need to know.'" (Id. at pp. 9–10 (quoting doc. 39-8, p. 8).) Plaintiff then argues that the personnel information exchanged in his text cannot be "considered confidential," and therefore did not violate the policy, since such personnel information is a matter of public record. (Id.) By showing his purportedly violative text messages were not covered by Defendant's confidentiality policy, Plaintiff concludes, he has established Defendant's reason was pretextual under the "work rule" defense. (Id. at pp. 8–9.) The "work rule" defense apparently posits: "[W]here the . . . reason for an adverse employment action is based on violation of a policy or rule, showing that the Plaintiff did not violate the rule is sufficient to show pretext." (Id. (citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999).) In reply, Defendant simply states that Plaintiff "cannot show evidence of pretext." (Doc. 42, p. 7.)

Plaintiff is correct in asserting that, under Eleventh Circuit law, an employer's claim that they terminated an employee for violating internal rules is "arguably pretextual" when the employee provides evidence "(1) that []he did not violate the cited work rule, or (2) that if []he did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." Damon, 196 F.3d at 1363 (citing Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1501 n.1 (11th Cir. 1991)). However, "an employer who fires an employee under the

mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." Damon, 196 F.3d at 1363 n.3.

The "work rule" standard accordingly only makes an employer's reason "arguably pretextual" when the employee creates a dispute "whether the decisionmaker believed that the employee violated the rule, not [just] whether the employee actually violated the rule." Calhoun, 2 F. Supp. 3d at 1241. Therefore, "[the] part of the Damon holding, which allows a plaintiff to establish pretext by demonstrating that the work rule violation did not occur, applies [only] in cases where the decisionmaker [personally] observes the alleged work rule violation and, thus, has personal knowledge thereof." Sweeney v. Ala. Alcoholic Beverage Control Bd., 117 F. Supp. 2d 1266, 1272 (M.D. Ala. 2000). The Court finds that, here, there is a dispute whether the "decisionmaker believed that the employee violated the rule" based on what she personally observed. See Calhoun, 2 F. Supp. 3d at 1241. Plaintiff has therefore made a sufficient showing of pretext to survive summary judgment.

Defendant was the decisionmaker who determined that Plaintiff violated the confidentiality rule and terminated him. (See doc. 39-2, p. 4.) Furthermore, Defendant herself personally observed the conduct that supposedly violated the rule when she viewed the text messages on March 22, 2022. See Spears v. Kaiser Foundation Health Plan of Ga., Inc., No. 1:17-cv-02102, 2019 WL 1225214, at *22–23 (N.D. Ga. Jan. 30, 2019), adopted by, No. 1:17-cv-2102, 2019 WL 1225199, at *1 (N.D. Ga. Feb. 14, 2019) (decisionmaker's observation of employee's digital records would create sufficient "personal knowledge" for work-rule standard). And there is plainly a dispute of fact regarding whether Plaintiff's text message that "Tim and Rene[e] are going to Cobb county" violated the D.A.'s Office's confidentiality policy.

Even more clearly, the record reveals that there is a further dispute regarding exactly what Defendant observed in the first place as the basis for her confidentiality-policy and termination decisions.  The following exchange is from Defendant's deposition:

> Q: You're saying that just telling somebody outside the office that . . . . Tim and Renee are going to Cobb County.  That statement alone would violate this confidentiality policy?
>
> [Defendant]: No, I'm not saying that that statement alone would violate the confidentiality policy because that's not all that Mr. Burton did to my knowledge.
>
> Q: Okay.  So if . . . his testimony is that that's the only information he communicated, you would dispute that based on your personal knowledge?
>
> [Defendant]: Yes.

(Doc. 34, pp. 132–33.)  And, indeed, Plaintiff does dispute that he communicated any additional personnel information, claiming he "sent a text message to the group text stating, in total, the following: 'So Tim and Rene[e] are going to Cobb county . . . .' [and] said nothing further about their departures from the D.A.'s Office."  (Doc. 39-2, pp. 3–4.)

The Court finds this is enough record evidence that "a jury could conclude 'that [Plaintiff's] employer penalized [him] for a work-rule violation that [he] did not commit—and which [Defendant] knew [he] did not commit.'"  Spears, 2019 WL 1225214, at *23.  Under governing Eleventh Circuit law, such a showing satisfies Plaintiff's summary-judgment burden of demonstrating pretext because it is sufficient evidence "to permit a reasonable fact finder to conclude that [] retaliatory animus was the but-for cause of the adverse action."  Id. at *19 (quoting Ellison v. City of Birmingham, 180 F. Supp. 3d 1028, 1035 (N.D. Ala. 2016)).  The Court accordingly **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's claim for Title VII retaliation (Count III).  (Doc. 31.)

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment. (Doc. 31.) Plaintiff has raised a genuine issue of material fact whether Defendant terminated him in retaliation for his participation in his colleague's EEOC charge. The Court accordingly **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's claim for Title VII Retaliation (Count III). (Doc. 31.) However, Plaintiff has abandoned the remainder of his claims by failing to respond to any of Defendant's arguments for summary judgment against those claims (Counts I, II, IV, V & VI). (Doc. 31.) The Court accordingly **GRANTS** Defendant's Motion for Summary Judgment as to those claims.

**SO ORDERED**, this 28th day of March, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA